### KUKER v. CARTER.

1. MARRIED WOMAN'S CONTRACTS.—A married woman is liable on her note and mortgage, as a contract affecting her separate estate, where the lender knows that she borrowed and received the money, without knowledge by him that it was received for another person.
2. FINDINGS OF FACT—APPEAL.—Where there is a conflict of testimony, and the master and Circuit Judge differ in their conclusions therefrom, the latter is *prima facie* correct.
3. MARRIED WOMAN—CONTRACTS—EVIDENCE.—The preponderance of the evidence in this case shows that the note and mortgage of the wife were given to secure advances to the husband, to be used by him in cultivating lands of his wife, of which he was entitled to the usufruct by virtue of his marriage and his wife's ownership of the land prior to the Constitution of 1868; and this conclusion is strengthened by the creditor's failure, without sufficient excuse, to produce his books, showing to whom the credit was originally extended.

Before WALLACE, J., Florence, March, 1892.

Action by John Kuker against Flora J. Carter for foreclosure of mortgage.

*Mr. John A. Kelley*, for appellant.

*Messrs. Woods & Spain*, contra.

July 27, 1894. The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER. This was an action to foreclose a mortgage on real estate, bearing date the 24th of January, 1884, given by the defendant, who then was, and still is, a married woman, to the plaintiff to secure an alleged debt of $1,692.29. The main defence, and the only one under which the questions presented by this appeal arise, is whether the defendant, as a married woman, had the power to make the contract which is the basis of this action. It appears that previous to the making of this mortgage the defendant had executed another mortgage on 200 acres of land to the plaintiff. The date of the first mortgage is not given in the "Case," but by the written consent of the attorneys on both sides, it appears that such mortgage was

executed on the 22d of November, 1882. Both of these mort-gages were, therefore, executed after the amendment to the married woman's act, incorporated in the General Statutes of 1882, which went into effect on the first day of May of that year, and before any question had been mooted as to the effect of that amendment—as that question seems first to have been raised in the case of *Habenicht* v. *Rawls*, 24 S. C., 461, which was not decided until the 25th of March, 1886.

The consideration of the debt secured by the first mortgage seems to have been supplies furnished by plaintiff to the hus-band of the defendant, and also the sum of $500, advanced in cash at or about the time the first mortgage was given, but to whom such cash advance was made—whether to the husband or the wife—is one of the contested questions in the case. A further advance in cash of $300 being desired, the plaintiff agreed to make such advance if the defendant would give a new mortgage on 300 acres of land, to secure the payment of such advance, as well as the balance due on the first mortgage. Accordingly the plaintiff advanced in cash the further sum of $300, but to whom such advance was made—whether to the husband or the wife—is likewise one of the contested questions in the case; and the first mortgage was cancelled, and the mortgage which constitutes the basis of the present action was given, which purports to secure the payment of the balance due on the first mortgage, as well as the advance in cash then made of $300.

The issues in the action were referred to a referee, who found that for so much of the debt secured by mortgage as represented supplies furnished, the defendant was not liable, and there being no exception to that finding, that matter is out of the case. But the referee also found that the advances in cash, $500 and $300, were made to defendant herself, for which she is liable; his language being: "That the two cash payments of $500 and of $300, respectively, above referred to, were made to the defend-ant or her husband, T. L. Carter, for her and in her presence." To this finding the defendant excepted, and the case coming before his honor, Judge Wallace, he sustained defendant's ex-ceptions, and rendered judgment dismissing the complaint, in

a short order which is not set out in the "Case;" but it is admitted by counsel on both sides that such was the judgment of the Circuit Court. From this judgment plaintiff appeals upon the several grounds set out in the record, which need not be repeated here; for, as it seems to us, the only question in the case is whether Judge Wallace erred in reversing the finding of the referee that the defendant was liable for the two items of cash advanced.

It is scarcely necessary, at this late day, to cite authority to show that where money was loaned or advanced to a married woman (under the law as it stood at the date of this transaction) such money, as soon as it was received by the married woman, became a part of her separate estate, and her contract to repay the same was a contract as to her seperate estate, upon which she would be liable, unless the lender knew at the time that the money was received for the husband or some third person. But to produce this result, it is necessary to show, as matter of fact, that the money was really loaned or advanced to the wife, and the burden of proof to show that fact is upon the lender. *Taylor* v. *Barker*, 30 S. C., at page 242.

So that it seems to us that the vital question in the case is whether the plaintiff has shown that the money was advanced to the defendant, and not to her husband. Upon this question, there is direct conflict in the testimony, and the referee has adopted one view and the Circuit Judge another. In such a case, as is said by Mr. Justice McGowan, in *Maner* v. *Wilson*, 16 S. C., at page 481, "the judgment of the Circuit Judge is at least *prima facie* right."

But besides this, it seems to us, from careful examination of the testimony, that the preponderance of the evidence is in favor of the view adopted by the Circuit Judge. Without going into any detailed examination of the testimony, it will be sufficient to point out some of the circumstances which have induced us to agree with the Circuit Judge rather than with the referee. The testimony clearly shows that the plaintiff for several years had been advancing supplies to the husband, who was cultivating the land which his

wife owned at the time of the marriage, and at the time both of these cash advances were made, the reason given for wanting the cash was that it would enable him to obtain supplies in Charleston on better terms if he had the cash. We do not think that there is any sufficient evidence that the husband ever was acting as the agent of his wife, except while running the turpentine business at Lake City, with which we do not understand that the plaintiff had any connection. Indeed, we do not see any occasion for his acting as agent of his wife in running the farm on what was called his wife's land; for there is a circumstance in the case which seems to have escaped the attention of the referee as well as of the counsel in the cause, and that is, that the wife owned this land at the time of her marriage, which, according to her testimony, which is not disputed, took place in 1866, prior to the adoption of the present Constitution, and if so, immediately upon his marriage, the husband took a vested estate in the land, whereby he acquired the usufruct thereof during the coverture, without any liability for the rent thereof, which vested interest in him was not divested by the provisions of the present Constitution. *Bouknight* v. *Epting*, 11 S. C., 71. Practically, therefore, the husband was the owner of the land during the coverture, and had a right to the use thereof, and he was not, and could not have been, the agent of his wife in farming or otherwise using the land. In this respect, the present case differs materially from the case of the *Scottish Company* v. *Deas*, 35 S. C., 42, cited by appellant's counsel.

There is another circumstance which is not without significance, and that is the failure on the part of the plaintiff to produce his books in evidence; for if those books showed that these advances were charged, at the time they were made, to the defendant and not to her husband, that would have been a very strong circumstance in favor of the plaintiff's view; but if, on the other hand, the books should show that these advances were charged, at the time they were made, to the husband and not to the wife, that would be a circumstance fatal to plaintiff's claim. Now, as the burden of proof was on the plaintiff, it was incumbent upon him to produce the best evidence in support

of his claim, or to show that such evidence was not attainable. It does not seem to us that the plaintiff has satisfactorily accounted for the failure to produce his books. True, he says in his own testimony: "My books of original entry were left in my back wareroom when I left for New York about five years ago. I have looked for them, but could not find them." But it is quite certain, from the testimony, that when the plaintiff removed to New York he left his business here in charge of agents, and no agent has been examined as to what became of the books, which must have been left in their charge. The statement of the plaintiff, that *he* had looked for the books, but could not find them, is scarcely satisfactory, when he probably came out from New York on a hurried visit to testify in this case.

From a careful review of the whole testimony we are satisfied that the preponderance of the evidence is in favor of the view which seems to have been adopted by the Circuit Judge, and that these cash advances, as well as the other supplies, were made to the husband for the purpose of enabling him to carry on the farm, which he had the right to cultivate, and which he was cultivating as his own, and not as the agent of his wife; and, therefore, the mortgage was given by the defendant to secure the debt of her husband and not her own debt, and hence she is not liable.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.